# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1888-16T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
R.G. SVP-83-00.

_____

Submitted October 11, 2018 – Decided January 7, 2019

Before Judges Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-83-00.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Remis Silver, Assistant Deputy Public Defender, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Victoria R. Ply, Deputy Attorney General, on the brief).

PER CURIAM

R.G. appeals from the trial court's December 2016 order entered following a review hearing pursuant to N.J.S.A. 30:4-27.35 which continued his

commitment to the Special Treatment Unit (STU) pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  He argues:

POINT I

THIS COURT SHOULD REVERSE R.G.'S CIVIL COMMITMENT ORDER BECAUSE THE TRIAL COURT FAILED TO CONSIDER R.G.'S REDUCED RISK OF SEXUALLY REOFFENDING SINCE HE WAS A JUVENILE WHEN HE COMMITTED HIS SEX OFFENSES.

A. The Trial Court Failed to Consider that Juvenile Offenses Often Reflect "Transient Immaturity" and Not an "Irretrievably Depraved Character."

B. The Trial Court Failed to Consider that the Adolescent Brain is Developing and that Juveniles Have a Much Lower Risk of Reoffending as an Adult.

C. The Trial Court Erred When It Failed to Consider that R.G., As A Juvenile Offender, Was More Susceptible to Negative Influences, Including Peer Pressure, but Can Better Withstand Those Influences as an Adult.

POINT II

THIS COURT MUST REVERSE BECAUSE THE TRIAL COURT BASED ITS DECISION ON FACTS THAT WERE NOT IN THE RECORD.

A.  R.G. Did Not Have Three Prior Convictions.

B.  R.G. Did Not Have Any Uncharged Sex Offense Victims.

C.  R.G.'s Own Psychologist Never Said that R.G. "Was on the Verge of a Life of Crime Including Sex Offenses."

D.  R.G.'s Psychologist Dr. Foley Did Not State That R.G. Currently Has a "Myriad of Psychological Problems."

E.  The Trial Court Incorrectly Cited Expert Testimony that R.G.'s Sexual Offenses [Were] Adult-Like, When Such Testimony Was Not Actually Presented.

F.  R.G. Had at Least Nine Years of Sex Offender Treatment in the STU, Not Just Two Years, and He Did Not Spend Significant Periods of Time in MAP Status.

POINT III

REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT FAILED TO BASE ITS COMMITMENT DECISION ON R.G.'S CURRENT MENTAL STATE AND CURRENT RISK OF SEXUALLY REOFFENDING.

We find no merit in these arguments and affirm.

Once convicted of a predicate offense as defined by the SVPA, a person who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment," N.J.S.A. 30:4-27.26, may be subject to an involuntary civil commitment as a sexually violent predator, N.J.S.A. 30:4-

27.32(a). To warrant commitment, or continuation of the person's prior commitment, the State must prove "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." In re Civil Commitment of W.Z., 173 N.J. 109, 132 (2002); see also In re Civil Commitment of J.M.B., 197 N.J. 563, 571 (2009); In re Civil Commitment of G.G.N., 372 N.J. Super. 42, 46-47 (App. Div. 2004). The court must address the individual's "present serious difficulty with control over dangerous sexual behavior," and the State must establish "by clear and convincing evidence . . . that it is highly likely that the person . . . will reoffend." In re Civil Commitment of W.Z., 173 N.J. at 130, 132-33; see also In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 611 (App. Div. 2003).

The record clearly establishes that R.G. committed an SVPA-predicate offense. He pleaded guilty and was adjudicated on two counts of aggravated sexual assault for inserting his penis into the anus of a four-year-old and a seven-year-old when he was sixteen-years-old. Charges stemming from R.G.'s anal penetration of a five-year-old were dismissed as part of the plea agreement.

Before reaching R.G.'s challenge to the trial court's analysis in deciding to continue his commitment, we first address his arguments that the court based

its decision on facts not supported by the record. R.G. argues the trial court improperly based its risk assessment of the likelihood he would reoffend on inaccurate information: he was adjudicated for the assault of all three victims – including the five-year-old; that he sexually victimized others but was not charged; and that the trial court continued R.G.'s commitment after it "falsely" found that R.G.'s psychologist, Dr. Timothy Foley, said that R.G. "was on the verge of a life of crime, including sex offenses."

The records reviewed by Dr. Roger Harris and Dr. Debra Roquet – both of whom were called by the State – included a February 22, 2000 psychiatric report,[1] which set forth R.G.'s admissions to masturbating and ejaculating while "grinding and fondling" the five-year-old approximately fifteen times in a one-month period, and to sexual involvement "with other children for which he was never charged." Notwithstanding that the trial court echoed the doctors' testimony about those incidents – to which no objection was made – the court did not base its decision to continue R.G.'s commitment on that information. The court, after completing an extensive oral review of R.G.'s treatment history, had already decided to continue his confinement based on his propensities and status in treatment. The court was discussing R.G.'s current and future treatment

---

[1] The report was attached to a juvenile predisposition report.

A-1888-16T5

when it commented about the "three . . . victims" and that it "was sure [R.G.] had many victims that he was not charged based on his admissions," before going on to say that R.G. matured and engaged in treatment, and with a fuller engagement it was hopeful that he would one day be conditionally discharged. The court also observed that R.G.'s own psychologist said he was on the verge of a life of crime, but never attributed that quote to Dr. Foley as R.G. now claims. The court continued:

> But he has aged, he's matured, his risk [has] gone down somewhat because of that, and that he's engaging [in] treatment and that if he will – if he's able to break through the wall that – that he's built and that – so as to be able to engage in treatment in the more complete way, hopefully it will get to the point where a conditional discharge would be appropriate for him. It's not appropriate now.

Even though the court's finding of a third conviction was inaccurate – and, in reviewing five of our prior decisions regarding his commitment, we discovered the procedural histories included reference to R.G.'s plea to three counts of aggravated sexual assault[2] – the trial court did not utilize that

---

[2] In re Civil Commitment of R.X.G., A-2587-03 (App. Div. Oct. 20, 2004) (slip op. at 2); In re Civil Commitment of R.X.G., A-2472-05 (App. Div. June 13, 2006) (slip op. at 1-2); In re Civil Commitment of R.X.G., A-2626-06 (App. Div. June 11, 2007) (slip op. at 1-2); In re Civil Commitment of R.S.G., A-3626-10 (App. Div. Nov. 10, 2011) (slip op. at 1-2); In re Civil Commitment of R.G.,

6

information in deciding to continue R.G.'s confinement. Nor did it use the quote from an October 3, 2000 report in concluding recommitment was necessary.[3]

We determine R.G.'s claim that Dr. Foley never testified that R.G. had "a myriad of psychological problems" to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add only that Dr. Foley testified that R.G. "certainly does have a host of psychological problems that we've been discussing today," such as his pedophilic disorder and conduct disorder.

We are not persuaded by R.G.'s argument that Dr. Roquet never stated that R.G.'s offenses "were very adult-like." Dr. Roquet testified that she considered the results of a Static-99R risk assessment because the authors of a previous version of the Coding Manual for the test – in effect at the time she administered the test – approved the use of the test, albeit with caution, to gauge the risk of re-offense "in cases where the offenses are more adult-like." The court's

_____

A-3917-11 (App. Div. Nov. 2, 2012) (slip op. at 2); In re Civil Commitment of R.G., A-5504-14 (App. Div. Dec. 7, 2015) (slip op. at 2). R.X.G., R.S.G. and R.G. all refer to appellant.

[3] The report was reviewed by the court in its lengthy recitation of the case history. The quote actually reads, "[R.G.] is on the brink of a life of continued crime and injury to himself and others. He's also on the brink of possible improvement if provided the appropriate intensive treatment he requires."

7

statement, "[R.G.'s] offenses are, as Dr. Roquet testified, . . . very adult like," is supported by this testimony. Moreover, a close examination reveals the court was merely commenting on the doctor's rationale for using the Static-99R tool; it did not base its decision on the Static-99R report. In fact, the court interrupted Dr. Roquet's testimony about the Static-99R after the doctor testified that a new Coding Manual – "hot off the presses" – recommended against scoring the test for juvenile offenders and that, although she included the test results in her report on R.G. because the older version permitted its use in R.G.'s situation, she would not again use it. The court stated it was "not interested in what" Dr. Roquet wrote in her report about the Static-99R, and was interested only in her present opinion; in fact, the court later asked the doctor, "In the absence of a . . . Static score, how do you reach your conclusion?"

This and other parts of the record belie R.G.'s contentions the trial court failed to base its decision on his "current mental state, good behavior, or treatment progress to determine if he was highly likely to sexually reoffend"; and that "[t]he trial court ignored the fact that R.G." has not been convicted of a sexual offense since January 1997, has not violated any of the STU rules in the last four years, has not had any Modified Activity Placements (MAPs), and has

positively responded to his many years of extensive sex-offender treatment in STU.

The court noted both the positive progress R.G. made as well as the current proofs that established that he is highly likely to reoffend. R.G. mischaracterized the court's recital of the long history of this case as the basis for its decision. The court based its findings on the expert testimony and evidence it found to be reliable and credible.

The court's chronicle of R.G.'s treatment recognized his initial modified activity status, caused by his violent and disruptive behavior, was followed by a positive turn – though marked at times by inappropriate behavior – that continued for a number of years. It noted Dr. Harris's testimony that R.G. started engaging in treatment in 2005, but then withdrew from treatment from 2010 to 2013, during which he was on MAP status for nine months for fighting; and was making limited progress in Phase 3A – his then current treatment level to which the court found he "accelerated" since re-engaging in treatment. The court pointed out "for substantial periods of time [R.G.] either got himself into MAP or refused to participate in treatment. Basically, he's been really engaging in treatment. The latest stint for the last two years."

The court recounted that Dr. Roquet, a member of the Treatment Progress Review Committee panel that performed R.G.'s annual evaluation, testified R.G. was still working on core treatment issues in Phase 3A, after re-engaging in treatment. The court noted Dr. Roquet's description of R.G.'s participation as "good, positive" and that in the last year "it's been excellent." The doctor's testimony also included problems: R.G. was adamant that he would not attend self-help groups; he had "very little preparedness" to leave the STU because of his sunted social skills; he did not want to participate in a therapeutic community; he experienced continued arousal to children.

The trial court, crediting both of the State's doctors' testimony, noted that R.G.'s "conduct has improved, and his hostile world view has softened somewhat, according to [Doctor Roquet], and this is a big step." The court, nonetheless, was concerned that his refusal to attend self-help groups, even with a different facilitator, "raises a serious question about what [R.G.] is going to do when he has to deal with a probation officer if he ever gets to the point of a conditional discharge." He agreed with Dr. Roquet's assessment that "the nature and intensity of treatment outside of the STU is nowhere near what it is inside, and particularly [as it concerns R.G.] who needs substantial treatment." And the court determined "he has not had anywhere near sufficient treatment." The trial

court decided to continue R.G.'s commitment, finding by clear and convincing evidence that he suffers

> from paraphilia in the form of pedophilia, and personality disorder, be it borderline or antisocial, and that in combination these two are . . . robust indicator[s] of high risk in that he's affected emotionally, cognitively and volitionally, and . . . is, therefore, predisposed to engage in acts of sexual violence, and that if released he would have serious difficulty controlling his sexually violent behavior, along with other behaviors as well, and that he would be highly likely, within the reasonably foreseeable future, to engage in sexual conduct.

The court's findings and its expertise as a specialist in these matters are entitled to our deference. In re Civil Commitment of R.F., 217 N.J. 152, 174-75, (2014) (citing In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). The findings are well-supported by the record. See id. at 175 (citing In re Civil Commitment of J.M.B., 197 N.J. at 597) (noting an appellate court only examines the record to determine if there is substantial credible evidence to support the trial court's conclusion).

Although all three testifying experts differed somewhat in their diagnoses of R.G., all agreed that he suffered from some mental disorder. Dr. Foley, as we already related, diagnosed R.G. with pedophilic disorder and conduct disorder. Dr. Harris diagnosed R.G. with pedophilic disorder, post-traumatic

A-1888-16T5

stress disorder by history and antisocial personality disorder with paranoid traits. Dr. Roquet diagnosed R.G. with pedophilic disorder, nonexclusive; antisocial personality disorder, post-traumatic stress disorder by history; and, provisionally, sexual sadism.

Dr. Harris found relevant R.G.'s continued violent fantasies and potential risk of violence caused by his admitted consistent distrust of people. The doctor suggested that, in order to treat R.G.'s compromised ability to internally modulate his impulses, R.G. should eventually transfer to a therapeutic community so he could "really get a much broader range of skills so he can better modulate his internal state," but not before he treated in his regular process group for, perhaps, another year. Dr. Harris also recommended that R.G. explore medication options to control his impulsivity. R.G. was resistant to both treatment in a therapeutic community and medication. Dr. Harris, based on R.G.'s treatment record, opined that R.G. had not yet had enough treatment to control the impulses caused by his mental disorders. He thought R.G.'s "poor problem solving, poor self-regulation, and his antisocial attitudes and behaviors really compromise[d] his functioning and increase[d] his risk to sexually reoffend."

Dr. Roquet, when reviewing the treatment modules R.G. completed, noted several – relapse prevention 2B, personal victimization, victim empathy, relapse prevention 2 – that the treatment team wanted him to repeat "to get a better grasp of the concepts that are presented to be able to apply the concepts to himself, to his own cycle, or to his own personal issues that he's working on in treatment." The doctor told of R.G.'s stated reason for adamantly refusing to attend recommended self-help groups. Referencing a prior conflict he had with a group facilitator, she opined, "he does not like someone telling him what to do." She also spoke of R.G.'s resistance to "the idea of the therapeutic community" and his associated "stunted social development." She also confirmed her discussions with R.G. about his arousal, including his self-reports "as recently as last year [2015]," of "pop-up thoughts about children." Dr. Roquet, however, said the treatment team did not "necessarily find it a negative that he is not very far advanced in understanding his deviant arousal" considering that he was "about two years into treatment."

Dr. Roquet opined, "it is very clear that [R.G.] presents with . . . difficulties of interpersonal functioning, hostility, problems with self-control, volatility, problems of decision-making, judgment, emotional reactivity and

negativity, all of which is over the past couple of years somewhat contained within the structured environment of the STU."

In light of the evidence and after a careful review of the trial court's decision, we determine R.G.'s contention that the court did not consider that he had more than two years of treatment and did not spend a significant amount of time in MAP status to be without sufficient merit to warrant discussion here. R. 2:11-3(e)(1)(E). The record indicates he restarted treatment in August 2013, a little over two years before Dr. Roquet wrote her March 2016 report.

Finally, the trial court did not, as R.G. argues, fail to consider that he presented a reduced risk of sexually offending because he was a juvenile when he sexually assaulted his victims. The court rejected Dr. Foley's opinion, which cited to United States Supreme Court holdings, that juveniles are distinct from adults and that he would not have committed R.G. if he knew in 2000 what he knows about the juvenile maturation process now. The trial court concluded, "that may be [Dr. Foley's] opinion but I don't see that there is any basis . . . for him to have it." Based on the testimony of the other doctors, the court rejected "Dr. Foley's view in this regard, as I also reject his conclusion that [R.G. is] not highly likely [to recommit a sexual offense]." See Slutsky v. Slutsky, 451 N.J. Super. 332, 357 (App. Div. 2017) (noting "a factfinder may accept or reject

14

expert testimony in whole or in part" (citing Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002))).

The inapposite United States Supreme Court's decisions cited by R.G. in advancing this argument – Roper v. Simmons, 543 U.S. 551 (2005), Graham v. Florida, 560 U.S. 48 (2010), Miller v. Alabama, 567 U.S. 460 (2012) and Montgomery v. Louisiana, 136 S. Ct. 718 (2016) – address criminal sentencing under the Eighth Amendment. See Roper, 543 U.S. 551 (holding juvenile death sentence unconstitutional); Graham, 560 U.S. 48 (holding juvenile life-without-parole sentence for non-homicide crimes unconstitutional); Miller, 567 U.S. 460 (holding juvenile's mandatory life sentence unconstitutional); Montgomery, 136 S. Ct. 718 (applying Miller to post-conviction relief and habeas corpus proceedings); see also State v. Zuber, 227 N.J. 422, 448 (2017) (holding Miller applies "in each [juvenile] case that calls for a lengthy sentence that is the practical equivalent of life without parole"). They do not apply to civil commitment hearings, see State v. Bellamy, 178 N.J. 127, 138 (2011) (noting civil commitment under the SVPA is not penal), which require annual evaluations for a "current mental state" and recommitments based on that analysis. A commitment is fundamentally distinct from mandatory life-long incarceration. See Kansas v. Hendricks, 521 U.S. 346, 362-64 (1997) (noting

criminal statutes deter and punish conduct while the civil commitment statute at issue did not; it was predictive, protective and "only <u>potentially</u> indefinite"); <u>see also</u> <u>In re Commitment of W.Z.</u>, 173 N.J. at 127 (noting the SVPA, is "essentially the same as the Kansas statute examined [by the United States Supreme Court] in <u>Hendricks</u> in that it 'requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated'" (quoting <u>Hendricks</u>, 521 U.S. at 357)).

Further, R.G. is no longer a juvenile. The court, in its annual review, evaluated whether a thirty-six-year-old man was likely to reoffend because he could not control his sexually violent behavior. The scientific data supporting the United States Supreme Court holdings in <u>Roper</u>, <u>Graham</u>, <u>Miller</u> and <u>Montgomery</u> do not concern a thirty-six-year-old sexual offender's current mental state. Dr. Foley testified that only four percent of juveniles are likely to sexually reoffend and that, given the new scientific research about juvenile decision-making, he would not have recommended R.G. be civilly committed in the first place. Dr. Foley cited to <u>Miller</u> and <u>Montgomery</u> to support his assertions about juveniles being treated differently under the law and asserted that, since R.G. has been civilly committed since 2000, he effectively has a

juvenile mindset.  The trial court found Dr. Foley's conclusion and reasoning lacking, including his assertion that he would not have committed R.G. in 2000. We discern no abuse of discretion in the trial court's holding.

We will not consider R.G.'s challenge, raised in an August 8, 2018 letter pursuant to Rule 2:6-11(d), to only the State's experts' testimony – not Dr. Foley's – based on our Supreme Court's recent decision, In re Accutane Litigation, 234 N.J. 340 (2018).  This argument was not raised to the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (per curiam).  The balance of R.G.'s arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION